UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKLYN WILSON,

    Movant,

v.

                                  Case No. 1:20-CV-264
                                  (Crim. Case No. 2:17:CR:5:03)

UNITED STATES OF AMERICA,             HON. GORDON J. QUIST

    Respondent.
_____/

**OPINION REGARDING WILSON'S § 2255 MOTION**

Pursuant to 28 U.S.C. § 2255, Jacklyn Wilson moves to vacate, set aside, or correct her sentence. (ECF No. 1.) Wilson claims that she was denied effective assistance of counsel at sentencing. Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," § 2255(b), the Court will deny Wilson's motion in its entirety without a hearing.

**I. FACTUAL BACKGROUND**

The Sixth Circuit summarized the facts of this case as follows:

> Jacklyn Wilson became involved in a drug-distribution conspiracy led by her son. The conspiracy involved transporting heroin and cocaine from Michigan's Lower Peninsula to its Upper Peninsula and selling it there. Conspirators drove the drugs up in cars and they had a method to avoid detection in case the police pulled them over. One or two women would travel as passengers with the drugs concealed in their vaginal cavities. Once they arrived in the Upper Peninsula, they removed the drugs and handed them over to sellers. When the women returned to the Lower Peninsula to pick up more drugs, they often carried the previous cash proceeds with them. Wilson was one of those women and she made several of these trips.

*United States v. Wilson*, 802 F. App'x 976, 977 (6th Cir. 2020).

## II. PROCEDURAL BACKGROUND

In early 2017, the Grand Jury for the Western District of Michigan returned an Indictment charging five individuals, including Wilson, with multiple controlled substance offenses. (R.1.)[1] Wilson's son and another co-defendant pled guilty; Wilson and two other co-defendants proceeded to trial. After a five-day trial before the undersigned, a jury convicted Wilson of (1) Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Cocaine Base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C); (2) Possession with Intent to Distribute Heroin and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) Possession with Intent to Distribute Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (R.175.)

Prior to sentencing, the presentence report writer calculated Wilson's base offense level at 26. (R.205 at PageID.1980) The presentence report writer also recommended adding three levels because Wilson was a "manager" or "supervisor" under U.S.S.G. § 3B1.1(b). (*Id.*) Wilson's criminal history category was calculated at two, based on two state criminal convictions. (*Id.* at PageID.1981-1982.)

Wilson's defense counsel objected to the initial offense level calculation. (R.210.) He argued that there was "no evidence whatsoever that Ms. Wilson was 'the organizer, leader, manager, or supervisor of one or more other participants." (*Id.* at PageID.2064.) He continued that Wilson was just "a mule who transported drugs in order to feed her own substantial drug habit." (*Id.*) Instead of an offense level enhancement for her role, Wilson's defense counsel wrote that Wilson's relatively "minor or minimal role" entitled her to a reduction under U.S.S.G. § 3B1.2 because "[t]here [wa]s no indication that Ms. Wilson understood the scope and structure of [her

---

[1] Citations to "R." refer to docket entries in Wilson's criminal case, 2:17-CR-5.

son's] activities, she did not participate in planning or organizing any criminal activity, she did not have a proprietary interest in the criminal activity, she was 'simply being paid to perform certain tasks.'" (*Id.* at PageID.2065.) Wilson's defense attorney also submitted a sentencing memorandum in which he argued for a four-level reduction for Wilson's minimal role. (R.218.)

At sentencing on June 7, 2018, the Court sustained Wilson's objection on the three-level enhancement for being a manager or supervisor and overruled the "minor or minimal role" objection. (R.265 at PageID.2524-2525.) Thus, Wilson's total offense level was 26 and criminal history category was two, resulting in a guideline range of 70 to 87 months. (*Id.* at PageID.2526). The Court sentenced Wilson to 70 months imprisonment on each count, to be served concurrently. (R.237.)

### III. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a), a prisoner in the custody of the United States may seek collateral relief from a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A "[s]ection 2255 [motion] is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68, 102 S. Ct. 1584, 1594 (1982)). Consequently, a habeas court will not readjudicate claims raised and rejected on direct review "absent countervailing equitable considerations." *Withrow v. Williams*, 507 U.S. 680, 720–21, 113 S. Ct. 1745, 1769 (1993); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.").

Despite the barriers to raising new claims on collateral review, ineffective-assistance-of-counsel claims are generally not reviewable on direct appeal, but instead must be raised in a motion under § 2255. *United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003)). Ineffective-assistance-of-counsel claims are analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under the first prong, the defendant must show that counsel's performance was "deficient." *Id.* at 687, 104 S. Ct. at 2064. That is, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The second prong requires the defendant to show that counsel's deficient performance prejudiced his defense—"that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

## IV. ANALYSIS

Wilson raises three issues related to alleged ineffective assistance of defense counsel at sentencing:

(1) Counsel failed to account for any considerations found in application notes 3B1.2 to advance arguments on a role reduction, which is a guideline error.

(2) Counsel failed to object to government's argument countering petitioner's mitigating role argument, and allowing the government to use a predated version of §3B1.2 in its authority.

(3) Counsel failed to object to a state conviction that was counted toward petitioner's criminal history category that should not have been counted.

(ECF No. 1 at PageID.3)

A court must grant a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). All of Wilson's arguments are based on facts that are unequivocally presented in the

4

record or factual allegations that are inherently incredible. Thus, no hearing is required. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018).

### A. Mitigated Role

Wilson's first two claims concern the application of Section 3B1.2 of the Sentencing Guidelines, which allows a court to decrease the offense level if the defendant had a mitigated role in the offense. The guideline provides the offense level of a "minimal participant" should be decreased by four levels, U.S.S.G. § 3B1.2(a), and the offense level of a "minor participant" should be decreased by two levels, U.S.S.G § 3B1.2(b). Amendment 794, effective November 1, 2015, provides additional guidance when determining whether a mitigating role adjustment applies:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)  the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

5

U.S.S.G § 3B1.2, cmt. n.3(C). "The defendant bears the burden of demonstrating [her] minor role by a preponderance of the evidence." *United States v. Sherrill*, 972 F.3d 752, 770 (6th Cir. 2020).

Wilson argues that but for her attorney's errors, she would have received a two-level reduction for being a minor participant. She contends that her defense counsel should have brought up the considerations found in the application notes of U.S.S.G. § 3B1.2. She further contends that her defense counsel should have objected to the government's argument regarding her role in the offense and its use of a predated version of U.S.S.G. § 3B1.2.

Wilson made similar arguments on her direct appeal when she argued that the Court erred by denying her request for a mitigated role reduction. *See United States v. Wilson*, 802 F. App'x 976 (6th Cir. 2020). In that appeal, Wilson also argued that the Court should have considered the five non-exhaustive factors recommended by Amendment 794. *Id.* at 979. Although the Sixth Circuit affirmed, it agreed with Wilson that the Court erred when denying Wilson's mitigating role request without comparing her to other participants. *Id.* at 979-80. The Sixth Circuit reasoned that the Court's brief discussion of Wilson (1) making trips, (2) transporting both money and drugs, and (3) having "some kind leadership role," was not sufficient. *Id.* at 980. Despite the error, the Sixth Circuit held that Wilson had not shown plain error. *Id.* at 981. As the Sixth Circuit explained, "although the district court did not perform the proper comparisons, it was not up to the district court to devise ways Wilson should be compared to other participants. That was her job." *Id.* The Sixth Circuit concluded that "Wilson ha[d] not explained why she was, in fact, less culpable than the average participant, nor even described the role that the average participant played." *Id.*

Now, in her § 2255 Motion, Wilson attempts to show that her defense counsel was ineffective by failing to address the non-exhaustive factors listed in Amendment 794 and

adequately comparing her to other participants.  Wilson argues that the majority of the participants in the conspiracy sold drugs, wired money, packaged drugs, rented vehicles, and obtained hotel rooms. She further contends that some of the women concealed drugs in their bodies. On the other hand, Wilson summarizes her role in the conspiracy as follows:

> My role in the conspiracy was as a mule, a ride along, to accompany the women who had the drugs concealed. I knew little about the scope and structure of the criminal activity, I never planned or organized the criminal activity, I had no decision making authority nor did I influence the exercise of decision making authority, and my participation was only in the transportation aspect as mule not in packaging, distributing, recruiting or profiting. I made no money. I was paid in drugs to use to support my habit while everyone else in the conspiracy profited well.

(ECF No. 14 at PageID.56-57.)

The government argues that Wilson's attorney did not raise the factors at sentencing because he chose to make more favorable arguments instead.  In other words, the government contends that Wilson's defense counsel made a strategic decision that did not fall below an objective standard of reasonableness.  Alternatively, the government argues that Wilson was not prejudiced by the defense counsel's conduct.

The Court need not address whether Wilson's defense counsel's performance was deficient because Wilson has failed to show that she was prejudiced. To establish prejudice, Wilson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068.  Thus, Wilson must show that had her attorney addressed the factors and adequately compared her to the average participant involved in the criminal activity, she would have received a more favorable sentence.  She has not.

Wilson drastically minimizes her role in the criminal activity.  As the Court stated at sentencing, Wilson was "very, very involved" and "was in this conspiracy up to her eyeballs."

7

(R.265 at PageID.2525.) She knew the structure and the scope of the criminal activity. She was a primary transporter of drugs and, unlike the average participant, she was involved in all three phases of the conspiracy—the Gladstone area, the Houghton/Lake Linden area, and the Atlantic Mine area. She had more responsibility than the average participant. While other participants concealed drugs in their bodies, Wilson was permitted to carry the drugs on her person. She was also one of the few participants that was permitted to carry money. On one occasion, Wilson brought back "roughly between $6,000-$10,000" in cash and was able to successfully hide it from police after the car in which she was riding was pulled over. Unlike the average participant, Wilson played a role in recruiting Anthony Brown and Corrie Ruth to join the conspiracy. The recruitment of accomplices, which the presentence writer correctly pointed out is a factor to be considered for a role enhancement per U.S.S.G 3B1.1(b) n.4. *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012).[2] Wilson also allowed her house to be used as a meeting point to package and conceal drugs before making the trip to the Upper Peninsula.

Some factors weigh in Wilson's favor. She did not actually sell the drugs and did not profit monetarily from the conspiracy. And Wilson is correct that her role was less than the roles of her son and Tracey Kilpatrick, who were the leaders and organizers of the drug conspiracy. However, Wilson cannot show that she "was substantially less culpable than the average participant." *United States v. Romero*, 704 F. App'x 445, 450 (6th Cir. 2017). Thus, Wilson has failed to show that she was prejudiced by her attorney's alleged failures regarding U.S.S.G. § 3B1.2 at her sentencing.[3]

---

[2] At sentencing, the Court sustained Wilson's objection to the role enhancement after hearing argument on whether Wilson "recruited" other co-conspirators. Although Wilson may not have "recruited" accomplices, she certainly played a role in the recruitment, which is more than the role the average participant had in recruiting others.

[3] Wilson does not elaborate on her claim that the government used a predated version of U.S.S.G. § 3B1.2. The Court finds no support in the record that the government used a predated version of U.S.S.G. § 3B1.2.

### B. Criminal History

Wilson's third claim is that her defense counsel failed to object to a state conviction that counted toward her criminal history category. Wilson had a criminal history category of two based on two prior state convictions each of which scored one point. The first state conviction was in 2006 for use of controlled substance. The second state conviction was in 2010 for frequenting a drug house. Wilson does not specify which of the two state convictions she believes that her defense counsel should have objected to or the basis for the objection. After the government filed its response explaining that the state convictions were properly scored, Wilson elected to not address this claim in her reply brief. The Court agrees with the government. The two state convictions were properly scored under U.S.S.G. § 4A1.1(c) and U.S.S.G. § 4A1.2(e)(2). Thus, Wilson has failed to show that her defense counsel was deficient for failing to object to the scoring of her state convictions and that she was prejudiced as a result.

### V. CERTIFICATE OF APPEALABILITY

Having concluded that Wilson is not entitled to relief, the Court must next determine whether a certificate of appealability should issue under 28 U.S.C. § 2253(c)(2). A certificate should issue if the movant has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000); *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court concludes that, for the reasons stated above, reasonable jurists could not find this Court's conclusion that Wilson is not entitled to relief debatable or wrong. Therefore, the Court will deny Wilson a certificate of appealability.

## VI. Conclusion

For the foregoing reasons, the Court will dismiss Wilson's § 2255 Motion and deny Wilson a certificate of appealability. A separate order will enter.


Dated: November 16, 2020                     /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE